TORELLE, Appellant, *v.* TEMPLEMAN et al., Respondents.

(No. 7,016.)

(Submitted March 16, 1933. Decided April 20, 1933.)

[21 Pac. (2d) 60.]

*Messrs. Blackford & Blackford* and *Mr. E. G. Toomey,* for Appellant, submitted an original and a reply brief; *Mr. Carl McFarland,* of Counsel, argued the cause orally.

*Mr. B. F. Maiden,* for Respondents, submitted a brief.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The plaintiff brought this action seeking specific performance of an accepted option contract.

On April 8, 1930, defendant W. O. Templeman and one Baggs executed and delivered to plaintiff the following agreement:

"Troy, Montana, April 8, 1930.

"For and in consideration of your services and expense incidental to this undertaking, we, the undersigned, agree and hereby undertake to deliver good and sufficient title, free and clear of all encumbrances, in and to the Tungsten King, Buckskin, Sun Fraction, Windy Pass Fraction and the Wind Jammer mining claims, located as being within section 12, township 30, N. R. 34 W., M. P. M. in Lincoln County, Montana, and The Tungsten King, Rising Sun Fraction and Windy Pass mill sites, same location, upon the payment of $1,000.00 to us by A. E. Torelle.

"[Signed] W. O. TEMPLEMAN.
"F. R. BAGGS.

"Accepted: A. E. TORELLE,
"1014 4th St. Coeur d'Alene, Idaho."

Later in the month of April, 1930, by correspondence between the parties to this option agreement, it was agreed that the plaintiff might exercise his option within six months from its date.

The ownership of the various claims and the amount of interest owned by each of the parties to the option agreement and other persons were as follows:

Tungsten King: J. L. Cobbledick, Frank R. Baggs, W. O. Templeman, a one-third interest each.

Wind Jammer: J. L. Cobbledick, Frank R. Baggs, W. O. Templeman, a one-third interest each.

Windy Pass Fraction: J. L. Cobbledick, W. O. Templeman, Frank R. Baggs, J. A. Thornton, a one-fourth interest each.

Rising Sun Fraction: Frank R. Baggs, W. O. Templeman, a half interest each.

Buckskin: W. P. Bromley and Maggie Templeman, a one-fourth interest each; W. O. Templeman, a one-half interest.

Within the six-month period, on August 6, 1930, the plaintiff made demand upon the defendants for the delivery of conveyances, and offered to pay the purchase price mentioned in the option; and later, but within the life of his option,

deposited a sufficient amount of money for that purpose in a bank at Troy, Montana, the place of residence of the defendants. Baggs in the meantime had acquired the interest of Thornton in the claims, and pursuant to the demand conveyed such interest as he had or acquired to the plaintiff, and accepted payment therefor in accordance with the terms of the option.

The defendant Templeman refused to convey his interest in the claims. The defendant Curtis secured an option from Baggs and Templeman, dated August 7, 1930, undertaking to convey a good and sufficient title to these claims within six months. Curtis, by a conveyance dated October 27, 1930, acquired the interest of Cobbledick in the various claims. He obtained the interest of defendant Templeman in these claims by conveyance dated November 6, 1930. Curtis secured his option with knowledge of the existence of the outstanding option in favor of plaintiff. Maggie Templeman, who owned an undivided interest in one of the claims, died soon after the option was secured by the plaintiff.

At the time plaintiff secured the option, he knew that various persons, other than Baggs and Templeman, were the owners of undivided interests in the various mining claims. Plaintiff at the suggestion of the parties secured a conveyance from Bromley of his interest, and paid the consideration necessary to obtain the conveyance, and somewhat in excess of the agreed proportionate price. He testified on the trial that he was willing to accept a conveyance from the defendants of such interests as they then owned. The interest of the estate of Maggie Templeman could not then be conveyed. If the plaintiff secured conveyances of the interests of the defendants, he would then be the owner of all of the claims, except as to the interest in the one claim standing in the name of Maggie Templeman, deceased.

This case was tried to the court without a jury, and resulted in a judgment of dismissal and for costs in favor of defendants, from which this appeal was perfected. The trial court made no specific findings of fact.

The defendants take the position that the contract was not an absolute option agreement, but rather an agreement to endeavor to acquire the outstanding interests in these mining claims, and, if successful, to convey their own interests, together with those acquired, to the plaintiff, provided he exercised his option. This argument depends upon the meaning to be attributed to the use of the word "undertake" as it appears in the option agreement.

One definition of the word "undertake" is "to endeavor to perform, attempt, try." Another definition is "to promise, engage, or agree, assume an obligation." (Funk & Wagnalls Dictionary.) The words "undertake" and "promise" are equivalent. (*Eastman* v. *Anthony*, 93 Ill. 599.) The words used in the option agreement were "agree and do hereby undertake." Manifestly the word "undertake" as used in the option agreement means that the parties giving the option obligated themselves to convey title to the claims.

A person may in good faith lawfully contract to sell land to which he does not have perfect title, or any title. (*Wilson* v. *Corcoran*, 73 Mont. 529, 237 Pac. 521; *Hollensteiner* v. *Anderson*, 78 Mont. 122, 252 Pac. 796.)

The defendants contend that the contract was not enforceable, in that it is lacking in mutuality.

An option contract, when accepted within the time and in the manner provided, becomes a valid contract upon which specific performance may be had. (*Ide* v. *Leiser*, 10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17; *Raiche* v. *Morrison*, 37 Mont. 244, 95 Pac. 1061; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918; *Bennett* v. *Petroleum County*, 87 Mont. 436, 288 Pac. 1018.)

The defendant Curtis was not a party to the option contract, but acquired interests in the mining claims subsequent to its execution and acceptance, with knowledge of its existence and that it had not expired. A subsequent purchaser with notice of a valid and irrevocable option takes subject to the right of the option holder to complete his purchase. (*Smith* v. *Bangham*, 156 Cal. 359, 104 Pac. 689, 28 L. R. A. (n. s.)

154

522; *Crowley* v. *Byrne*, 71 Wash. 444, 129 Pac. 113; *Horgan* v. *Russell*, 24 N. D. 490, 140 N. W. 99, 43 L. R. A. (n. s.) 1150; *Ross* v. *Parks*, 93 Ala. 153, 8 So. 368, 30 Am. St. Rep. 47, 11 L. R. A. 148; *Marthinson* v. *King*, (C. C. A.) 150 Fed. 48.)

Such subsequent purchaser is a necessary party to an action for specific performance of the option contract. (Pomeroy on Specific Performance, 3d ed., sec. 491.)

The failure of the defendants to secure a complete title is no defense to an action for specific performance, provided the option holder is willing to accept such title as the defendants may have; and the court will compel compliance with the agreement so far as possible. (*Alley* v. *Peeso*, 88 Mont. 1, 290 Pac. 238; *Anderson* v. *Willson*, 48 Cal. App. 289, 191 Pac. 1016; *McCreary* v. *Stallworth*, 212 Ala. 238, 102 So. 52; *Preece* v. *Wolford*, 196 Ky. 710, 246 S. W. 27; *Lathrop* v. *Columbia Collieries Co.*, 70 W. Va. 58, 73 S. E. 299; *Mitchell* v. *White*, 295 Ill. 135, 128 N. E. 803; *Moore* v. *Gariglietti*, 228 Ill. 143, 81 N. E. 826, 10 Ann. Cas. 560; *Armstrong* v. *Sacramento Valley Realty Co.*, 52 Cal. App. 110, 198 Pac. 217; *Farnum* v. *Clarke*, 148 Cal. 610, 84 Pac. 166; *Bryant Timber Co.* v. *Wilson*, 151 N. C. 154, 65 S. E. 932, 134 Am. St. Rep. 982.)

Plaintiff, in his complaint by allegations and the special prayer for relief, sought an abatement of the purchase price in so far as the defendants might be unable to convey the entire interest outstanding in the property; but compensation or abatement of the purchase price is not allowable where the option holder acquires it with notice of the outstanding interests. He is regarded as agreeing to purchase whatever interest the vendor has and is able to convey. (*Rosenow* v. *Miller*, 63 Mont. 451, 207 Pac. 618; Pomeroy on Specific Performance, 3d ed., sec. 442.)

Whenever the seller is unable to convey all that he agreed to, the buyer is entitled, as a matter of right in all cases, to specific performance of whatever interest the seller has, if he will pay the full contract price. (5 Pomeroy's

Equity Jurisprudence, 2d ed., sec. 2256; *Williams* v. *Kilpatrick*, 195 Ala. 563, 70 So. 742; *Anderson* v. *Kennedy*, 51 Mich. 467, 16 N. W. 816; *Stromme* v. *Rieck*, 107 Minn. 177, 119 N. W. 948, 131 Am. St. Rep. 452; *Millard* v. *Martin*, 28 R. I. 494, 68 Atl. 420.)

The plaintiff in this case, in addition to the prayer for ▮ specific relief, in his complaint included a prayer for general relief, and in his testimony expressed his willingness to pay the entire purchase price, whether he secured a conveyance of all outstanding interests in the mining claims or not, if defendants conveyed to him their interests. Under a prayer for general relief, the court will adapt and shape its decree in accordance with the true equity of the case, provided the relief is within the issues of the complaint and answer. (10 R. C. L. 557; compare *Blackwelder* v. *Fergus Motor Co.*, 80 Mont. 374, 260 Pac. 734.)

This court in the case of *Rosenow* v. *Miller*, supra, denied partial specific performance of a contract for the conveyance of real estate, but there the plaintiff insisted upon receiving an abatement of the purchase price commensurate with the interest which the defendant was unable to convey, whereas here plaintiff is willing to accept a conveyance of the partial interests and to pay therefor the entire purchase price.

The plaintiff in his complaint set forth allegations with reference to additional damages sustained by reason of the breach of the option contract. On the trial he offered no proof of damage aside from expenditures for the assessment work on the mining claims. These expenditures plaintiff would have necessarily made had the contract been performed. Some attempt was made to prove other items of damage, but no evidence was adduced which could be the basis of any finding on the subject.

The judgment of the trial court cannot be sustained upon any theory. It is reversed and the cause remanded, with directions to enter a judgment in favor of the plaintiff and against the defendants, upon the plaintiff's depositing into court for the use of the defendants the sum of $583.32, re-

quiring the defendants to execute a conveyance to the plaintiff of all their rights, title and interest in and to the mining claims described in the option contract.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.